## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **BETTY JO PETERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-09-S-083-NW** |
| | ) | |
| **SSA COMMISSIONER,** | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Betty Jo Peters, asserts a claim for discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA").[1] The action presently is before the court on defendant's motion for summary judgment.[2] For the reasons set forth below, the court concludes that the motion is due to be GRANTED.

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

---

[1] *See* doc. no. 1 (complaint).

[2] *See* doc. no. 12.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[3]  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  Inferences in favor of the non-moving party are not unqualified, however.  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

---

[3] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis supplied).

*See also Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

## II.  STATEMENT OF FACTS

Plaintiff has been employed by the Social Security Administration ("SSA") Office of Disability Adjudication and Review ("ODAR") in Florence, Alabama since 1984.[4]  In 2007, plaintiff — who was sixty-two years of age at the time — was passed over for a promotion in favor of a thirty-one-year-old colleague, Erin Weaver ("the selectee").[5]  At the time, plaintiff and the selectee were paralegal specialists.  Both had been promoted to that position in 2004, and stationed in the Florence, Alabama ODAR office.[6]  Jerri Ann Alexander, in her position as the Hearing Office Director ("HOD") for the Florence office, was the recommending officer; the selecting officer was Judge Ollie Garmon,  the Regional Chief Administrative Law Judge for the

---

[4] *See* doc. no. 14 (defendant's evidentiary submissions), Ex. 1 (Depo. of Betty Peters, herafter "Plaintiff Depo."), at 6-8; and Ex. 5 (plaintiff's application for the group-supervisor position, hereafter "Plaintiff App.").

[5] *See* doc. no. 14 (defendant's evidentiary submissions), Ex. 2 (Depo. of Jeri Ann Alexander, hereafter "Alexander Depo."), at Exs. 13 (memorandum dated Sept. 20, 2007) and 15 (workforce profile).

[6] *See* Plaintiff Depo. at 6-8; Plaintiff App.; doc. no. 14 (defendant's evidentiary submissions), at Ex. 6 (Erin Weaver's application for the group-supervisor position, hereafter "Selectee App.").

ODAR Regional Office in Atlanta, Georgia.[7]  The selection at issue was for one of the two group supervisor positions in the Florence office:  a position that had been vacated by Ms. Alexander when she was promoted to HOD in May of 2007.[8]

The vacancy for the group-supervisor position was officially announced on May 22, 2007, and both plaintiff and the selectee submitted applications for the position.[9]  Plaintiff and the selectee, along with other qualified applicants for the position, were placed on a Best-Qualified List of paralegal specialists for the selecting official to choose from.[10]  Attorneys were also permitted to apply for the position, but their applications were governed by a separate, parallel announcement and Best-Qualified List.[11]

## A.     The Qualifications of Plaintiff, the Selectee, and Other Applicants

At the time of the selection, plaintiff held a tremendous advantage over the selectee in seniority (twenty-four years of service compared to eight), but no advantage in length of service in their current position, paralegal specialists.[12]

---

[7] *See* Alexander Depo. at 19-20 and 186; doc. no. 14 (defendant's evidentiary submissions), Ex. 3 (Depo. of Judge Ollie L. Garmon, III, herafter "Garmon Depo."), at 9-10.

[8] *See* Alexander Depo. at 19-20.

[9] *See* doc. no. 14 (defendant's evidentiary submissions), Ex. 7 (vacancy announcement); Plaintiff Depo. at 21-22; Plaintiff App.; Selectee App.

[10] *See* Plaintiff Depo. at 25-30.

[11] *See id.* at 27-28.

[12] *See* Plaintiff App.; Selectee App.

Moreover, the selectee, unlike plaintiff, was regularly one of the top producers as a decision writer, a primary responsibility of paralegal specialists.[13]  Both also had experience serving as a backup for the hearing officer systems administrator ("HOSA"), but the selectee's experience was more recent, was more extensive in scope, and involved use of a more modern system.[14]  Backing-up the HOSA entailed volunteering to come into the office at times when the party would otherwise be off duty.[15]  In addition, the selectee served as a coordinator and trainer for the newly implemented electronic filing system utilized by ODAR.[16]

Over the course of her service with the SSA, plaintiff performed a wider variety of jobs than the selectee, including serving in "lead" positions that, plaintiff claims, gave her supervisory experience in practice, even though the positions did not involve official supervisory duties.[17]

Finally, the selectee held an educational advantage over plaintiff.  The selectee

---

[13] *See* Alexander Depo. at 33-35.  Plaintiff claims that the selectee's production numbers were disproportionately high because she wrote decisions while on "down time," but provides no evidence that the selecting official had any knowledge of that fact. *See* doc. no. 16 (plaintiff's response to defendant's motion for summary judgment, hereafter "Plaintiff's Response"), at 26.

[14] *See* Alexander Depo. at 33-35 and 160-65.

[15] *See id.* at 33-35.

[16] *See id.* at 161.

[17] *See* Plaintiff Depo. at 53-54; Plaintiff App.; Alexander Depo. at 130 and 164-65.

held a bachelor's degree in business administration, with a major in management.[18] Plaintiff, on the other hand, only completed what she refers to as a "2-year Secretarial Science Program."[19]

Plaintiff also points out two other applicants who were older than the selectee, but who had skills and training that plaintiff asserts were equal to or superior to the selectee in some way. For example, Nita Burgess, a fifty-three-year-old paralegal applicant, had a business degree, was a top writer, and had "lead" experience.[20] Ms. Burgess's degree was not in management, however, and her production numbers were inferior to the selectee's.[21] Mallette Richey, a forty-three-year-old attorney applicant, served as a trainer for the newly implemented electronic filing system, much like the selectee, and, of course, had a law degree.[22] The applications of Ms. Richey and the other attorney applicants were discounted, however, because the attorneys were not as well-rounded in their knowledge of the office work flow due to the fact that they had experience performing only one function in the office, *i.e.*, writing decisions, and had not otherwise served in the office long enough to pick up a broad understanding

---

[18] *See* Selectee's App. at 17; Alexander Depo. at 145; doc. no. 14 (defendant's evidentiary submissions), at Ex. 10 (Parsons memorandum, hereafter "Parsons Memo").

[19] Plaintiff's App. at 34.  This apparently was not a degree program because plaintiff does not claim to have a college degree.

[20] Alexander Depo. at 144-46.

[21] *See id.* at 145.

[22] *See id.* at 71-74 and Ex. 15 (workforce profile).

6

of the various positions in the office.[23]  Of the attorneys in the office, Ms. Richey had

the least seniority, which Ms. Alexander considered when evaluating the attorney

applicants, even though she did not do so for the paralegal applicants.[24]

## B.    Ms. Alexander's Recommendation

Initially, Ms. Jerri Ann Alexander believed that she was the selecting official,

and, in fact, told plaintiff that she intended to select her for the group-supervisor

position.[25]   Shortly thereafter, however, Alexander was advised by the ODAR

Regional Office that she was only the *recommending* official, and not the *selecting*

official for that position.[26]  In response, Ms. Alexander *recommended* that plaintiff

receive the promotion to group supervisor.  Even so, as Ms. Alexander began to

receive training in the duties of her new position and gained a greater understanding

of her new role as HOD, she began to harbor doubts about her recommendation of

plaintiff.  She began to believe that she had allowed her almost-quarter-century-long

friendship with plaintiff to cloud her professional judgment.[27]

---

[23] *See id.* at 71-74 and Ex. 9 (email from Alexander explaining why she did not recommend the attorney applicants).

[24] *See id.*

[25] *See* Alexander Depo. at 90-92; and doc. no. 14 (defendant's evidentiary submissions), at Ex. 8 (emails between Alexander and David J. Harris, an employee in the Regional Office, hereafter "Alexander-Harris Emails").

[26] *See* Alexander Depo. at 92-95 and186; Alexander-Harris Emails; Garmon Depo. at 27.

[27] *See* Alexander Depo. at 22-23, 27-30, and 183-88.

Upon her return to the Florence office from HOD training, Alexander was requested by the Regional Office, pursuant to office policy, to write a memo justifying her recommendation for the position at issue.[28]  In response, and in spite of her reservations about recommending plaintiff, Alexander prepared a memo dated July 31, 2007, and in which she identified plaintiff and the selectee as the top two candidates, and concluded by recommending plaintiff for the position.[29] Alexander addressed the memo to Judge Ollie Garmon and faxed it to a member of Judge Garmon's staff, Jake Shanahan, in the Regional Office.[30]  Alexander testified that she recommended plaintiff in the July 31, 2007 memo because she had already advised the Regional Office of her initial recommendation and did not then know that she could change it.[31]   Later, and obviously second-guessing her original recommendation, Alexander had a telephone conversation with Sheila Parsons, a supervisory management analyst in the Regional Office, and mentioned that she had made a mistake and should have recommended the selectee, because the selectee was best qualified for the job.[32]  Parsons advised Alexander that she could change her

---

[28] See id. at 31-32, 101-102, and 170.

[29]   See doc. no. 14 (defendant's evidentiary submissions), at Ex. 9 (July 31, 2007 memorandum); Alexander Depo. at 31-32.

[30] See Alexander Depo. at 101-102.

[31] See id. at 31-32.

[32] See id. at 114 and 186; doc. no. 14 (defendant's evidentiary submissions), at Ex. 4 (Depo. of Sheila Parsons, hereafter "Parsons Depo."), at 11-12.  As a supervisory management analyst,

recommendation, which she promptly did.[33]   Thereafter, Parsons sent an email to

Judge Garmon advising him that she had discussed the recommendation with

Alexander and other ODAR Regional staff members, and that they agreed the selectee

was the recommended candidate.[34]  However, Alexander never prepared a new memo

explaining her reasons for recommending the selectee.[35]  Significantly, plaintiff

testified that she did not believe Alexander had changed her recommendation because

of plaintiff's age.[36]

## C.     Judge Garmon's Selection Decision

Judge Garmon never interviewed plaintiff, the selectee, or any other applicant,

and, admittedly, did not have a clear memory of the details of the selection process.[37]

Judge Garmon stated in various places that he relied on Alexander's recommendation

*and* that he reviewed the applications submitted to him, but he did not reference both

sources of information in each instance in which the bases of his decision were

---

Parsons supervised six field liaison officers, who, in turn, each supervised four to six hearing offices, one of which was the Florence, Alabama office.  *See* Parsons Depo. at 11-13.

[33] *See* Alexander Depo. at 114 and 186.

[34] *See* Parsons Depo. at 63-66; Parsons Memo.

[35] *See* Garmon Depo. at 207 and 212; Alexander Depo. at 122-23.

[36] *See* Peters Depo. at 49-51; doc. no. 13 (defendant's memorandum in support of summary judgment, hereafter "Defendant's Brief"), Statement of Facts, ¶ 71; Plaintiff's Response, at 6 (admitting ¶ 71 of defendant's statement of facts).

[37] *See* Plaintiff Depo. at 17; Garmon Depo. at 23-24.  Judge Garmon makes numerous promotional decisions each year as part of his responsibilities overseeing 31 offices, 2,000 support staff, and 300 administrative law judges.  Garmon Depo. at 10-11.

discussed, a fact which plaintiff makes much of, as will be discussed below.[38]

Despite not always being clear on the details of this selection *process*, however, Judge Garmon was consistent in stating his primary *reasons* for choosing the selectee, chief of which was Alexander's recommendation.  Alexander's recommendation of the selectee was evidenced in a memorandum to Judge Garmon prepared by Sheila Parsons, reading in part as follows:

> After much discussion with the HOD, Bobbie, Jake, and myself, the recommended candidate for the Florence GS is [the selectee, who] holds a degree in Business with a major in management.  [Ms. Alexander] initially was recommending   [the plaintiff], a long-time ODAR employee.  However, [the selectee] clearly is the top runner and after [Ms. Alexander's] HOD training, she realized that she should recommend the best qualified candidate.[39]

This memorandum also mentions the second reason proffered by Judge Garmon as a basis for his decision:  the fact that the selectee held a business degree with a major in management.[40]   As previously noted, plaintiff held no college or university degree.[41]

The final three reasons relied upon by Judge Garmon were derived from

---

[38] *See* Garmon Depo., Ex. 5 (Affidavit of Judge Garmon, hereafter, "Garmon Aff."), at 5, and Ex. 6 (interrogatories submitted to Judge Garmon as part of investigation into age discrimination complaint by Nita Burgess arising out of the same slection decision, hereafter "Burgess Interr."), ¶¶ 18 and 19.  *See also* Garmon Depo. at 69-70.

[39] Parsons Memo.

[40] *See id.  See also* Garmon Depo. at 66-67 and 182-183; Selectee App.

[41] Plaintiff App.

elements of the selectee's job performance.[42]  First, the selectee had recently been responsible for backing up the HOSA.[43]  Second, the selectee had been a coordinator and trainer for the newly implemented electronic filing system.[44]  Third, the selectee had been one of the top producers as a decision writer.[45]

After the selectee was awarded the position, plaintiff informed Alexander that she was going to file this suit alleging age discrimination.  Plaintiff testified that Alexander stated:  "I know I don't need to be telling you this as the supervisor, but I think you — you know, that would be the thing for you to do."[46]

## III. DISCUSSION

Congress enacted the Age Discrimination in Employment Act ("ADEA" or "the Act") during 1967 for the stated purposes of "promot[ing] employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment."  29 U.S.C. § 621(b); *see also, e.g., Equal Employment Opportunity Commission v. Chrysler Corp.*, 759 F.2d 1523, 1524 (11th Cir. 1985) ("Congress passed the ADEA in 1967 to protect older workers

---

[42] *See* Defendant's Brief at 24.

[43] *See* Garmon Depo. at 68 and 186-188.

[44] *See id.* at 68-69.

[45] *See id.* at 68 and 186.

[46] Plaintiff Depo. at 13-14.

11

against discrimination in the workplace."). Specifically, the Act requires that "all personnel actions [by federal agencies] affecting employees who are at least 40 years of age . . . be made free from any discrimination based on age." 29 U.S.C. § 633a(a).

Plaintiff does not claim to have direct evidence of age-based discriminatory animus on the part of Judge Garmon. Accordingly, she must prove her claim with circumstantial evidence, navigating the burden-shifting framework defined by the Supreme Court in a series of three decisions rendered over a period of two decades, beginning with *McDonnell Douglas Corporation v. Green,* 411 U.S. 792 (1973), then elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), and finally elucidated in *St. Mary's Honor Center v. Hicks*, 509 U.S. (1993). Although these cases involved discrimination claims under Title VII, a variant of the analysis also applies to claims based upon the ADEA. *See Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 141-42 (2000) (noting widespread use of *McDonnell Douglas* framework to analyze age-discrimination claims based upon circumstantial evidence, and assuming, but not holding, that it applies to ADEA claims) (citing *O'Connor v. Consolidated Coin Caterers Corp*., 517 U.S. 308, 311 (1996) (assuming that *McDonnell Douglas* analytical framework applies to ADEA claims based on circumstantial proofs)). *See also*, *e.g*., *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*) (same); *Bogle v. Orange County*

12

*Board of County Commissioners*, 162 F.3d 653, 656 (11th Cir. 1998) ("Since Bogle has presented no direct evidence that Orange County discharged him because of his age and relied, instead, on circumstantial evidence, the burden-shifting analysis set forth in *McDonnell Douglas* . . . governs his ADEA case."); *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998) (applying *McDonnell Douglas* framework in an ADEA case); *Mitchell v. Worldwide Underwriters Ins. Co.,* 967 F.2d 565, 566 (11th Cir. 1992) (same); *Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1500 (11th Cir. 1991) (same); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987) ("This court applies a slightly modified version of the test set forth in *McDonnell Douglas Corp. v. Green*" when evaluating the strength of circumstantial evidence to prove a *prima facie* case of age discrimination).[47]

Under that now-familiar analytical-framework, a plaintiff must first establish a *prima facie* case of intentional discrimination on the basis of her age. Establishment of the *prima facie* case creates a rebuttable presumption that the employer's decision-maker unlawfully discriminated against the plaintiff on the basis of her age. If the plaintiff establishes a *prima facie* case of age discrimination, the defendant-employer

---

[47] Although the Supreme Court of the United States recently observed that it "has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . utilized in Title VII cases is appropriate in the ADEA context," the Eleventh Circuit continues to apply the framework in ADEA cases. *Gross v. FBL Financial Services, Inc.*, — U.S. —, —, 129 S. Ct. 2343, 2349 n.2 (2009); *Childress v. Caterpillar Logistics Services, Inc.*, No. 09-12772, 2010 WL 827907, at *1 n.3 (11th Cir. Mar. 11, 2010).

then must articulate a legitimate, nondiscriminatory reason for the challenged employment action. If the employer is silent in the face of the presumption created by the demonstration of a *prima facie* case, the court must enter judgment for the plaintiff, because no issue of fact remains in the case. On the other hand, if the defendant articulates one or more legitimate, non-discriminatory reasons for its decision, the presumption of discrimination created by the demonstration of a *prima facie* case is rebutted, and plaintiff then has both the obligation and the opportunity to come forward with evidence — including the previously produced evidence establishing the *prima facie* case — sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision, but simply a pretext for an unlawful, discriminatory animus. If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding the credibility of each of the defendant employer's articulated reasons, the employer is entitled to summary judgment on the plaintiff's claim. *See*, *e.g.*, *Burdine*, 450 U.S. at 254; *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir.2000) (*en banc*); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).

In an ADEA case where the adverse action complained of is a failure to promote, the plaintiff may establish a *prima facie* case of age discrimination by

showing that:  (a) she applied for, and was qualified to perform the duties of the position to which she sought promotion;[48] (b) she was at least forty years of age on the date of her application; (c) despite her qualifications, she was rejected; and (d) the promotion was awarded to a younger individual.[49] *See*, *e.g.*, *Chapman*, 229 F.3d at 1024; *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207-08 (11th Cir. 1997); *Ramsey v. Chrysler First, Inc.*, 861 F.2d 1541, 1543 (11th Cir. 1988); *Moody v. Alabama Department of Education*, 883 F. Supp. 624, 629 (M.D. Ala. 1995); *Gaston v. Southern Bell Telephone and Telegraph Co.*, 674 F. Supp. 347, 349 (N.D. Ga. 1987).

The defendant in the present action concedes that plaintiff has established a *prima facie* case of discrimination under the ADEA, but argues that there were legitimate, non-discriminatory reasons for the contested promotion decision:  *e.g.*, Alexander's recommendation, and Judge Garmon's conclusion that the selectee's

---

[48] *Cf. Dorsch v. L.B. Foster Co.*, 782 F.2d 1421, 1425 (7th Cir. 1986) ("The meaning given to the term 'qualified' depends upon the nature of the employer's business at the time the decision to offer or terminate employment is made.").

[49] As the Eleventh Circuit observed in *Corbin v. Southerland Intern. Trucks*, 25 F.3d 1545 (11th Cir. 1994):

> Unlike race and sex discrimination cases, the plaintiff in an age discrimination case need not necessarily prove that his replacement was outside the protected class, that is, under forty years of age.  The plaintiff in an age discrimination case may establish a prima facie case merely by establishing that his replacement was younger than he, provided that the discrepancy between the ages, along with any other relevant evidence, is sufficient that a fact finder could reasonably infer age discrimination.

*Id*. at 1549 (footnoted citations omitted).

education, production levels, and recent experience with the computer-related processes in the office were superior to plaintiff's.[50]  In response, plaintiff asserts that defendant's proffered reasons are pretextual, and argues that she was more qualified than the selectee, and that Judge Garmon's alleged misstatements, and Alexander's statement that plaintiff should proceed with her plan to file an age-discrimination suit, are evidence of discrimination.[51]

## A.   Qualifications of Plaintiff and the Selectee

In the context of a failure-to-promote claim,  a plaintiff cannot show pretext "by simply arguing or even by showing that [she] was better qualified than the [individual] who received the position [she] coveted."  *Alexander v. Fulton County,* 207 F.3d 1303, 1339 (11th Cir. 2000) (alterations added).  Instead, the plaintiff must "show that the disparities between the successful applicant's and her own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Brooks v. County Commission of Jefferson County,* 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *Cooper v. Southern Co.,* 390 F.3d 695, 732 (11th Cir. 2004), *cert denied,* 546 U.S. 960 (2005), and also citing *Ash v. Tyson Foods,* 546 U.S.

---

[50] *See* doc. no. 11 (defendant's brief in support of his motion for summary judgment) (hereafter, "Defendant's MSJ Brief"), at 16.

[51] Plaintiff's Response at 20.

454, 457 (2006)).[52]

This court does not find the disparities between the relative qualifications of plaintiff and the selectee to be so significant that no reasonable employer could have chosen the candidate selected over the plaintiff for the position in question. *Ash*, 546 U.S. at 457. The selectee's qualifications were superior to plaintiff's in the first area relied upon by Judge Garmon: Alexander's revised recommendation. A supervisor's recommendation is a significant feather in the cap of any applicant, particularly where, as here, the supervisor, Alexander, admittedly was not motivated by age-based animus, the supervisor was a close friend of the plaintiff, and, yet, the supervisor still recommended the selectee over plaintiff. Moreover, not only did Alexander recommend the selectee over plaintiff, but every other supervisor in the record also recommended the selectee over plaintiff.[53]

---

[52]In *Ash v. Tyson Foods,* 546 U.S. 454 (2006), the Supreme Court disapproved of the standard previously employed by the Eleventh Circuit: *i.e.,* that "[p]retext can be established through comparing qualifications only when 'the disparity in qualifications is so apparent as virtually to jump off the page and slap you in the face.'" *Id.* at 456-57 (internal citations omitted). Even so, the Supreme Court did approve of a standard employed elsewhere by the Eleventh Circuit: *i.e.,* "that 'disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Id.* at 457 (citing *Cooper,* 390 F.3d at 732).

[53] Note that this is not a "cat's paw" case where the plaintiff argues that a discriminatory supervisor used an innocent selecting official as her "paw" to discriminate against the plaintiff. *See, e.g., Llampallas v. Mini-Circuits, Lab, Inc.,* 163 F.3d 1236, 1249 (11th Cir. 1998) ("In a cat's paw situation, the harasser clearly causes the tangible employment action, regardless of which individual actually signs the employee's walking papers."); *Bernstein v. Sephora*, 182 F. Supp. 2d 1214, 1218 (S.D. Fla. 2002) ("[W]here the titular decisionmaker is no more than a cat's paw, courts have looked beyond the formal structure of the decisionmaking process and held defendant

In addition, plaintiff's education was superior to plaintiff's. The selectee earned a four-year bachelor's degree in business administration with a major in management, while plaintiff had no college degree. Plaintiff correctly points out that a college degree was not required for the position; even so, that fact does not mean that education level is not helpful in distinguishing between two otherwise well-qualified applicants. Defendant has already conceded that plaintiff was qualified for the position. At this juncture, the issue is *relative* qualifications. In this context, the fact that the selectee not only had a college degree, but more specifically had a degree with a concentration in management, the key component of a supervisory position, is relevant and mitigates against plaintiff's argument that she was clearly more qualified.[54]

It is true that plaintiff had greater seniority in terms of the number of years of

---

companies liable for the invidious bias of the de facto decisionmaker.") (citing *Llampallas*, 163 F.3d at 1249; *Shager v. Upjohn Co*., 913 F.2d 398, 405 (7th Cir. 1990)). Plaintiff admits that she does not believe that Alexander's recommendation was motivated by discriminatory animus.

[54] Plaintiff points out that another paralegal applicant, fifty-three-year-old Nita Burgess, had a college degree, high productivity, and lead experience, but was also overlooked. Burgess's productivity, however, though better than plaintiff's, was not as good as the selectee's, and her degree was not in management. In the court's view, Burgess's qualifications are not so superior to the selectee's that no reasonable person could have hired the selectee.

Plaintiff also points out that an attorney applicant, forty-three-year-old Mallette Richey, served as a trainer for the newly implemented electronic filing system and, of course, had a law degree. Ms. Richey's application was discounted by Ms. Alexander, however, because Richey was not well-rounded in her knowledge of the office work flow due to the fact that she had experience performing only one function in the office, *i.e.*, writing decisions, and had not otherwise served in the office long enough to pick up a broad understanding of the various positions in the office.

service in the SSA; yet, seniority was not one of the criteria upon which the selection was made.[55]  Instead, recent experience and productivity were emphasized by Judge Garmon and Alexander.  Despite fewer years of service, the selectee served in almost every position in which plaintiff served, except that of "lead."  Moreover, at the time of the selection, plaintiff and the selectee had served for the same length of time in their then-current position of paralegal specialist.  Further, the selectee had superior experience with the modern electronic filing system utilized by the office and, in fact, trained others in its use.[56]  Again, as with education, this experience with modern technology was not required for the position, but was something that a reasonable decision-maker could use to distinguish between the relative qualifications of the applicants.  Additionally, the selectee's production, as one of the top-three decision writers in the office, was far superior to plaintiff's.  A reasonable person could value the selectee's degree and recent experience, production, and training as being superior to plaintiff's seniority and prior experience as a "lead."

In short, plaintiff failed to show that the disparity in qualifications was so great

---

[55] The court recognizes that Alexander, at least, evaluated seniority in the context of attorney applicants.  *See* footnote 54, *supra*.  However, she provided a legitimate reason for treating attorney applicants differently — *i.e.*, because they only performed one function, decision writing, seniority was used to gauge the length of their exposure to other office functions — which plaintiff failed to rebut.  More importantly, plaintiff does not argue that Judge Garmon, as the selecting official, evaluated any applicants on the basis of seniority.

[56] *See* footnote 54, *supra*.

"that no reasonable person, in the exercise of impartial judgment, could have chosen the [selectee] over the plaintiff." *Brooks v. County Commission of Jefferson County,* 446 F.3d at1163 (internal quotation marks omitted).[57]

## B.   Alleged Misstatements by Judge Garmon

Plaintiff also attempts to prove pretext by arguing that a reasonable jury could find that Judge Garmon fabricated his reasons for the selection because, in some of his interrogatory or affidavit responses, he indicated that Alexander's recommendation was the source of the information on which he based his decision; yet, in his deposition testimony, he indicated that he also relied on the applications submitted. Plaintiff's argument is based on answers pulled from an affidavit executed by Judge Garmon as part of the EEOC investigation of plaintiff's claims and interrogatories submitted to Judge Garmon as part of the EEOC investigation of Nita Burgess's age-discrimination claims arising out of the same selection decision. Those documents, however, when taken together, leave no reasonable room to doubt that Judge Garmon's decision was informed by both the applications and Alexander's recommendation. Furthermore, any lack of clarity extends only to the *source* of the

---

[57] Although not asserted by defendant in his brief as reasons for Judge Garmon's selection, plaintiff, in her response, also argues that, much like the selectee, she had a history of volunteerism, productivity, assertiveness, and multi-tasking. Plaintiff's Response at 22-27. Nothing in the facts or plaintiff's argument, however, establishes any great disparity between the two in these areas. A reasonable person could easily have chosen either applicant based on these criteria.

information obtained, not to the *reasons* relied upon by Judge Garmon.

In the affidavit, Judge Garmon indicates on at least two occasions that he reviewed the applications submitted.[58]  Moreover, the fact that he admits that his review of the decision-making criterion was informed by Alexander's recommendation does not contradict the fact that he also reviewed the applications. Similarly, in the interrogatories, Judge Garmon's admission that he relied on Alexander's recommendation, rather than personal knowledge, is not inconsistent with his review and consideration of applications as well.[59]

Even now, plaintiff does not argue that Judge Garmon failed to review the applications. To the contrary, plaintiff relies on Judge Garmon's review of the applications to contradict the judge's assertion that he did not know the ages of the applicants — the only evidence that Judge Garmon knew the relative ages of the applicants was the fact that their birth dates were contained in their applications.  In other words, all parties agree that Judge Garmon reviewed and relied upon the

---

[58] *See* Garmon Aff. at 2 ("I became aware that Ms. Peters applied for the position when I reviewed the selection package") and 3 (indicating that he reviewed or evaluated the applications for "[a]ll management positions, GS 13 or higher").

[59] Interestingly, in the interrogatories, the questions themselves stated that Alexander's recommendation provided information that she did not, in fact, provide (based on the evidence before this court).  Judge Garmon's answers reflect the apparently mistaken belief that both parties held in that case regarding the source of the information relied upon by Judge Garmon.  Furthermore, the contrast being delineated in Judge Garmon's answers was personal knowledge versus knowledge from an outside source, rather than contrasting knowledge gained from the applications versus knowledge gained from the recommendation.

applications.

In light of the foregoing, the court finds that Judge Garmon was *not* inconsistent as to his reasons for selecting the selectee over plaintiff, and that any confusion that existed regarding Judge Garmon's reliance on the applications is insufficient to warrant sending this case to a jury.

## C.      Alexander's Statement Regarding Filing Suit

When informed of plaintiff's intention to file an age-discrimination action, plaintiff claims that Alexander responded: "I know I don't need to be telling you this as the supervisor, but I think you—you know, that would be the thing for you to do."[60]   Plaintiff argues that this statement is evidence of discrimination.   Her argument on this point, however, was not well developed.   In fact, plaintiff's entire discussion amounts to a single clause contained in the final summary of her argument — *i.e.*, "When the above facts are taken into consideration *with the testimony of Peters that Alexander advised her to pursue an age discrimination claim*, a reasonable fact finder could determine that age was the motivating factor in the non-selection of Peters for the Group Supervisor position."[61]   Plaintiff made no attempt to explain how her conversation with Alexander constitutes proof of pretext.   This court need not consider arguments that are not fully developed or bolstered with legal

---

[60] Plaintiff Depo. at 13-14.

[61] Plaintiff's Response at 13.

authority.  *See United States Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to address a party's "perfunctory and underdeveloped argument") (citing *Flanigan's Enterprises, Inc. v. Fulton County*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that "fail[ure] to elaborate or provide any citation of authority in support [of an argument]" results in waiver)).  *See also Lyes v. City of Riviera Beach*, 126 F.3d 1380, 1388 (11th Cir. 1997) (observing that "the onus is upon the parties to formulate arguments").  Without the benefit of any argument or authority to the contrary, the court concludes that Alexander's affirmation of plaintiff's plan to sue should not reasonably be viewed as evidence of intentional age discrimination on the part of Judge Garmon.

In short, plaintiff has failed to meet her burden of "cast[ing] sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude" that defendant was not actually motivated by that legitimate reason.  *Combs,* 106 F.3d at 1538.  Through an apparently objective process, the ODAR personnel department determined that plaintiff and the selectee, among other candidates, each satisfied the requirements necessary to be listed on the Best-Qualified List.  Judge Garmon then chose to utilize Alexander's recommendation and his evaluation of the material before him to select among the best-qualified candidates.  Although this court might have made a different decision,

23

> [f]ederal courts "do not sit as a super-personnel department that reexamines an entity's business decisions.  No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere.  Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior."

*Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (quoting

*Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988) (internal

citations omitted)).

In light of the foregoing, the court finds that plaintiff has failed to establish that

defendant's legitimate reasons for its failure to promote plaintiff were pretextual and,

therefore, her age discrimination claim must fail.

## IV.  CONCLUSION AND ORDER

In accordance with the foregoing, defendant's motion for summary judgment

is GRANTED, and all of plaintiff's claims are dismissed with prejudice.  Costs are

taxed to plaintiff.  The Clerk is directed to close this file.

DONE and ORDERED this 10th day of August, 2010.

United States District Judge

24